**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SHANNON LEIGH HARPER,**

     **Plaintiff,**

                                **Civil Action 2:18-cv-1143**
                                **Chief Magistrate Judge Elizabeth P. Deavers**

   **v.**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

## OPINION AND ORDER

Plaintiff, Shannon Leigh Harper, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). This matter is before the Court for disposition based upon the parties' full consent to the jurisdiction of the United States Magistrate Judge (ECF Nos. 13, 14), and for consideration of Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF No. 12). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

## I.     BACKGROUND

Plaintiff filed her application for benefits in January 2016, alleging that she has been disabled since July 10, 2015, due to post-traumatic stress disorder ("PTSD") and depression. (R. at 187–88, 212.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge.

Administrative Law Judge Noceeba Southern ("ALJ") held a hearing on April 27, 2018, at which Plaintiff, represented by counsel, appeared and testified, along with John R. Finch, a vocational expert. (R. at 35–59.) On May 30, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 18–29.) On August 3, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–8.) Plaintiff then timely commenced the instant action.

## II.    HEARING TESTIMONY

### A.    Plaintiff's Testimony[1]

Plaintiff testified at the administrative hearing that she discontinued working in 2015 because she "had a hard time engaging in the job, engaging with the people, not showing up, not being able to concentrate, complete my duties and the employer let me go." (R. at 43–44.) She tried to find other work but was unsuccessful. (R. at 44.) Plaintiff does not feel she can work substantially due to PTSD. "I have a hard time interacting with people particularly men. I become terrified in unsafe situations, I don't feel, I lock up, I lock up, I run, I shutdown mentally and physically." (R. at 44–45.) Plaintiff described her trauma as follows,

> While I was in the military my, my trauma is actually military sexual from I was raped by the chief master sergeant of the base. The rape period lasted approximately six months, during that time I was also under surveillance by the chief. After that my commander had decided, the chief ended up going into a court martial situation. My commander decided he was of a fundamentalist religious view and so for two and a half years after that I was ordered into his office twice a

---

[1] The Court limits its analysis of the hearing testimony and medical evidence to the issues raised in Plaintiff's Statement of Errors.

week to forgive or to pray to him and to his God for forgiveness of my sins of being raped.

(R. at 45.)   Plaintiff testified that this occurred from 1995 through 1998.   (*Id.*)   She was honorably discharged from the military on April 15th, 1998.   (R. at 46.)   Plaintiff was asked how her work history remained consistent up to 2015 and she replied she "pushed through it" and believes that she was misdiagnosed.   (*Id.*)   She continued that she was unable to remain employed with each employer for much time, with the maximum time at one employer being "maybe three years, but on average it was a year and a half to two before the problems started." (*Id.*)

Plaintiff testified that she has been awarded VA benefits with a total and permanent disability rating for unemployability and compensated at 100%, noting that "[t]he PTSD rating itself is 70%, but the total impairment is for the unemployability." (R. at 47.)

Plaintiff testified that her medications include Lunesta, Effexor, a mood stabilizer, and Klonopin and Percocet for pain.   (*Id.*)   Describing her concentration and focus, she commented that "[i]t comes and goes.   When I feel outside of my comfort zone not good at all.   I have a hard time just staying on task, staying on track, I can't follow through." (R. at 48.)   Plaintiff noted that she normally sleeps only one and a half or two hours each night.   (*Id.*)   Plaintiff said she experiences nightmares "once to twice a week" which "have been going on for several years."   (*Id.*)   Plaintiff described a bad day as "I can't get out of bed, just very depressed, can't sit like this, anxiety is high."   (*Id.*)   These bad days occur about five days a month.   (*Id.*)   Plaintiff testified that she is emotionally

unavailable.  (R. at 49.)  She stated that her mental health issues ultimately led to her divorce.  (R. at 49–50.)

Plaintiff testified that she does not feel able to return to her prior work because "I'm terrified, I'm terrified when I'm in situations, meetings.  Meetings are horrible, I don't feel safe, I'm on alert, I shutdown."  (R. at 50.)

Plaintiff has shared parenting with her ex-husband of their six-year-old son.  She spends time with him playing games, reading and riding their bikes to a park in their neighborhood.  (R. at 52.)  Plaintiff testified that she drives on a daily basis.  (R. at 53.) She has two friends that she sees, one of them maybe twice a month and the other one maybe once a month.  (*Id.*)  She shops online, goes grocery shopping, and watches "some" television.  (*Id.*)

### B.    Vocational Expert Testimony

The Vocational expert ("VE") testified at the administrative hearing that Plaintiff's past relevant employment was as a contract manager, classified as a sedentary exertion, very skilled job; a management consultant, classified as a light exertion, very skilled job; and a bookkeeper, classified as a sedentary exertion, skilled job.  (R. at 55.)  Based on Plaintiff's age, education, and work experience and the residual functional capacity ultimately determined by the ALJ, the VE testified that a similarly situated hypothetical individual could not perform Plaintiff's past work but could perform 490,000 medium jobs in the national economy such as a hand packager, cleaner or order picker.  (R. at 56–57.)

The VE also testified that if the hypothetical individual missed 2 or more days per month of work or is off task 20% of the day, she would be unable to sustain full-time competitive employment.   (R. at 58.)

## I.    MEDICAL RECORDS

### A.    Treatment Prior to Onset Date of Disability

Plaintiff received all of her treatment at the Veterans Affairs Medical Center ("VA"). She was initially evaluated by Sarita Mahajan, M.D., a psychiatrist at the VA in March 2009, where she reported a depressed mood, decreased motivation, poor concentration, and social isolation, as well as a history of panic attacks, with a fear of dying, palpitations, shortness of breath, and being overrun.   (R. at 514–17.)   She was assessed with bipolar disorder and depression.   (R. at 517.)   Plaintiff presented to the mental health clinic in July 2013, complaining of depression and increased anxiety, and presenting as depressed and very tearful. (R. at 405.)

Plaintiff was assessed by a social worker in August 2013, at which time she reported periodic crying spells, lack of energy and motivation, a tendency to avoid problems at work and at home, a loss of interest in family life and intimacy with her husband, and feelings of isolatation.   (R. at 482–83.)   Plaintiff also reported having trouble sleeping, resulting in daytime fatigue and problems with short-term memory leading to problems at work, where she had been "counseled" for handling situations poorly.   (*Id.*)   She believed she would lose her job due to the effect of her depression on her work performance.   (R. at 485.)   She was diagnosed with bipolar disorder with episodic depression.   (R. at 487.)

In September 2013, Plaintiff spoke with clinical psychologist, Kristin Rodzinka, Ph.D. about her history of military sexual trauma, reporting that her issues related to her trauma were having an adverse impact on her marriage and requesting trauma-focused treatment. (R. at 403.) On October 11, 2013, she described her military trauma to Dr. Rodzinka, who conducted the PTSD Symptom Scale Interview and noted a score in the moderate range. (R. at 470–71.) On October 18, 2013, she was seen for follow-up and medication management. (R. at 462.) At that time, she was rated at 50% service-connected disability for bipolar disorder. She had recently returned to work following gall bladder surgery. She was medication compliant and denied significant side effects. She reported her work was "going ok." Her sleep was fair, she occasionally had sleepless nights and her depression was stable. (R. at 463.)

By February 2014, Plaintiff discussed wanting to improve her relationship with her husband. Dr. Rodzinka noted she was well engaged during the session but intermittently tearful. "She reported being able to fairly successfully cover up her difficulties." (R. at 454.) In April 2014, Plaintiff reported constant panic, crying, feeling cheated, anxious, remorse, and guilt. (R. at 447.) In May 2014, she was still working full-time but reported an inability to maintain regular attendance at work due to stress. She reported that being in therapy, she felt flooded with trauma memories and had increased anxiety and panic feelings, sleep problems, angry feelings, and variable appetite. (R. at 441.) Mental status examination findings included anxious mood and congruent affect. (R. at 443.) In July 2014, Plaintiff described ongoing problems at work and a feeling that she was being targeted. (R. at 386.)

When seen by Nathan Tomcik, Ph.D., on December 11, 2014, Plaintiff reported re-experiencing symptoms including intrusive thoughts, nightmares of the trauma, flashbacks, and

physiological reactivity secondary to trauma-related cues.   (R. at 359–63.)   She reported

avoidance/numbing symptoms including anhedonia, avoidance of overt reminders of her trauma,

thought suppression, difficulty feeling close with others, difficulty sleeping, angry outbursts,

hypervigilance, and difficulty concentrating.   (*Id.*)   She described some difficulty maintaining

stable employment over the years due to interpersonal issues stemming from her hypervigilance

and irritability. (*Id.*)   Dr. Tomcik noted that Plaintiff had a depressed and irritable mood,

congruent affect, and tearful behavior.   (*Id*.)

On March 3, 2015, Plaintiff reported to Dr. Rodzinka that she was working 3 days a week

in a less stressful and contentious job, but that her separation from her husband was extremely

stressful.   (R. at 379.)   Dr. Rodzinka administered the Dissociative Experiences Scale-II, which

resulted in high levels of dissociation.   (R. at 377.)   Dr. Rodzinka noted Plaintiff's

endorsements were much higher than is typically associated with PTSD alone.   (*Id.*)

### B.    Records After Onset Date of Disability

The VA found Plaintiff entitled to "individual unemployability" as of July 10, 2015,

because she was "unable to secure or follow a substantially gainful occupation as a result of

service-connected disabilities."   (R. at 172.)   Her determination was based on PTSD and major

depressive disorder, resulting in 70% service-connected disability.   (R. at 173.)

Plaintiff was seen in family counseling in October 2015 with Dr. Tomcik, who noted that

she exhibited a depressed mood and congruent affect.   Her rate, tone, volume of speech were all

noted within normal limits.   (R. at 330–31.)   She exhibited no gross impairment in memory,

concentration or attention, or thought disorder.   (*Id.*)   Plaintiff's judgment and insight were

found to be intact, and Dr. Tomcik noted that Plaintiff appeared motivated for treatment.   (*Id.*)

In November 2015, Plaintiff met with Amanda Shea, Ph.D., and Dr. Tomcik to update her treatment plan. (R. at 323–27.) Plaintiff reported a reduction in her PSTD symptoms, but said her relationship with her husband was distressed. (R. at 324.) At that time, Plaintiff exhibited a depressed and irritable mood, congruent affect, and was tearful. Dr. Shea noted Plaintiff's thought content had a pessimistic bias. (R. at 326.)

On January 25, 2016, Plaintiff saw Dr. Shea and described chaos in her marital relationship as her primary chronic stressor. (R. at 307–09.) On mental status examination, she was alert and oriented, casually dressed and appropriately groomed. (*Id.*) She exhibited a depressed and anxious mood and was crying throughout the session. (*Id.*) Her speech was within normal limits, fair insight and judgment, and she exhibited no suicidal or homicidal ideation. (*Id.*)

On February 17, 2016, Plaintiff continued her evaluation with Dr. Shea. (R. at 571–77.) Plaintiff reported symptoms of PTSD related to military sexual trauma including intrusions, avoidance, strong negative belief, self-blame, hypervigilance, sleep disturbance and heightened startle response. (R. at 572.) She was interested in individual therapy and reported reduction in her symptoms of PTSD since her last treatment plan. (*Id.*) Her relationship with her husband remained distressed. (*Id.*)

On March 11, 2016, Plaintiff had her first session of cognitive processing therapy for PTSD with Dr. Shea. (R. at 283.) Plaintiff reported significant anxiety and ambivalence around beginning trauma-focused treatment. (*Id.*) She was going on vacation soon and believed that it will be helpful to her in therapy. (*Id.*)

Plaintiff called into the gynecology clinic on June 13, 2016, reporting that she was on a trip to Disney in Orlando, Florida, and that she had two syncopal episodes the Thursday night prior to the trip, when waking up to get something to eat.   (R. at 532–43.)   Plaintiff stated that she passed out and fell, but denied any lacerations, bumps, contusions or bruising.   (R. at 543.) A nurse practitioner at the VA informed Plaintiff that she was to avoid all amusement rides that have a posted health warning sign, such as roller coasters, rides that may induce motion sickness, or ones that have sudden drops or high speed.   (R. at 532.)

Plaintiff's care was transferred from the Columbus VA in September 2016.   Plaintiff reported that her medication was "not doing much."   (R. at 635.)   She discussed with her provider multiple stressors in her life, including court issues for divorce proceedings/financial settlements and child custody issues.   (*Id.*)   Plaintiff reported that last two months have been extremely stressful and her depression and anxiety were rated 6-7 /10.   (*Id.*)   Her sleep was 'all over the board' and some days did not want to get out of bed.   She stated that she enjoyed spending time with her 5-year old son who resided with her most days.   (*Id.*)   She stated she had a hard time keeping her appointments and she cannot handle psychotherapy sessions.   (*Id.*)

Plaintiff began treating with David Swope, M.D. in February 2018.   (R. at 641–44.)   Dr. Swope noted Plaintiff was a recent patient at the VA, last seen in September 2017.   Plaintiff reported feeling increasingly agitated while taking her medication.   (*Id.*)   She noted stress due to family and described her sleep as "broken."   (R. at 641.)   She rated her depression as 6-7/10 and also reported experiencing nightmares twice weekly, with flashbacks off and on.   (*Id.*)   She noted that she experienced panic attacks 2-3 times a week and reported being hyper vigilant and tense when away from home.   (R. at 642.)   Dr. Swope noted that she maintained limited eye

contact but that she was polite and cooperative, her speech was non-pressured and fluent, her mood was depressed, and her affect was tearful. (*Id.*) Dr. Swope assessed that Plaintiff was moderately depressed, has PTSD, and anxiety symptoms and depression, and he adjusted her medications. (R. at 643.)

Plaintiff was again seen by Dr. Swope for medication management and supportive therapy in March 2018. (R. at 638–41.) She stated she was not feeling much difference, rating her symptoms at 7-8/10. (*Id.*) She reported that she has slept only 2-3 hours a night and said she was up 6 times the evening prior. (*Id.*) She was tired and drained during the day, had increased appetite, and had gained weight. (*Id.*) Plaintiff reported panic attacks that occur when she leaves the house or has commitments. (*Id.*)

On May 8, 2018, Dr. Swope opined that Plaintiff is disabled as a result of her chronic PTSD, panic disorder with agoraphobia, and major depression. (R. at 660–61.) He noted that her impairments result in marked restrictions of activities of daily living and that she is emotionally unstable and unable to work with others due to anxiety and flashbacks. (*Id.*) He further noted that she has marked difficulties in maintaining social functioning and marked deficiencies of concentration, persistence, or pace, resulting in frequent failure to complete tasks in a timely manner. (*Id.*) Dr. Swope concluded that Plaintiff's mental conditions will likely cause her to be absent from work "all days." (R. at 661.)

C.    State Agency Review

State agency psychologist, Robyn Murry-Hoffman, Ph.D., reviewed the file in April 2016 and found that Plaintiff had mild restrictions in her activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence and

pace.  (R. at 66.)  Dr. Murry-Hoffman found that Plaintiff's statements are partially consistent,

noting that Plaintiff reported lack of motivation and her ability to do things varies a lot.  (*Id.*)

She found that Plaintiff's medically determinable impairments could reasonably be expected to

produce the alleged symptoms, but the severity of symptoms reported is not consistent.  (*Id.*)

She noted that evidence in the file shows that Plaintiff is independent in her activities of daily

living with no limitations.  (R. at 67.)  Dr. Murry-Hoffman found that Plaintiff can carry out

simple and complex tasks that are not tied to strict production demands or that require a

sustained fast pace, that she is capable of only occasional public interaction due to symptoms of

PTSD, that her symptoms would increase with work stressors, and that she can adapt to a setting

in which duties are routine and predictable.  (R. at 68–69.)

State agency psychologist, Deryck Richardson, Ph.D., reviewed the file at the

reconsideration level in July 2016 and affirmed Dr. Murry-Hoffman's assessment.  (R. at 79–

85.)

## IV.  THE ADMINISTRATIVE DECISION

On May 30, 2018, the ALJ issued her decision.  (R. at 18–29.)  The ALJ found that

Plaintiff meets the insured status requirements of the Social Security Act through December 31,

2020.  (R. at 20.)  At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.      Is the claimant engaged in substantial gainful activity?
    2.      Does the claimant suffer from one or more severe impairments?
    3.      Do the claimant's severe impairments, alone or in combination, meet or

had not engaged in substantially gainful activity since July 10, 2015, the alleged onset date.

(*Id.*) The ALJ found that Plaintiff has the following severe impairments: PTSD; major

depressive disorder; panic disorder with agoraphobia; and hypotension with syncope. (*Id.*) She

further found that Plaintiff did not have an impairment or combination of impairments that met

or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P,

Appendix 1. (R. at 21.) At step four of the sequential process, the ALJ set forth Plaintiff's

residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant could frequently climb ramps or stairs and occasionally climb ladders, ropes, or scaffolds. She should avoid the use of moving, heavy, or hazardous machinery and unprotected heights. From a mental standpoint, the claimant should be able to perform simple routine tasks in a job where any changes are well explained. She should be able to tolerate interaction with supervisors and coworkers [on] occasional but superficial basis, superficial being defined as anything beyond the performance of job duties and job functions, and for short duration and a specific purpose. She should avoid interaction with the public. She should avoid tandem side-by-side work. She could tolerate goal-based work not at a production rate pace and with no strict production quotas in a position with only occasional decision making and occasionally changes so as to provide low stress. She would be off task up to 7% of the workday.

---

equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(R. at 22.)    In reaching this determination, the ALJ accorded "little weight" to the opinions of Plaintiff's treating psychiatrist, Dr. Swope, finding that his opinion was unsupported by his treatment notes and conflicted with the other evidence of record.    (R. at 26–27.)    The ALJ further noted that Dr. Swope treated Plaintiff for only a brief period of time and he relied primarily on Plaintiff's self-reports rather than objective evidence.    (*Id*.)    The ALJ afforded "greater weight" to the assessments provided by Dr. Murry-Hoffman and Dr. Richardson, the state agency non-examining psychological consultants, finding their opinions were "consistent with and generally supported by the evidence of record."    (R. at 26.)

The ALJ further noted that as to Plaintiff's allegations, her "symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.    Overall, while the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms."    (R. at 23–24.)

Relying on the VE's testimony, the ALJ determined that even though Plaintiff is unable to perform her past relevant work, other jobs exist in the national economy that Plaintiff can perform.    (R. at 28.)    She therefore concluded that Plaintiff was not disabled under the Social Security Act.    (R. at 29.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ erred by failing to properly evaluate the opinion of Dr. Swope and by failing to consider Plaintiff's strong work history in assessing her credibility.  (ECF No. 15 at 2–21.)  The Court addresses each issue in turn.

## 1. Evaluation of Dr. Swope's Opinion

The ALJ assigned little weight to the opinion of Dr. Swope, explaining her assignment of

weight as follows:

> . . . the claimant's treatment provider offered an assessment of the claimant's mental functioning in May 2018, essentially noting marked limitations with a GAF of 50, noting that the claimant would miss all days per month of work due to her impairments, which would be consistent with total disability based on these limitations. The undersigned gives this little weight, however, as it is not consistent with or supported by the greater weight of the evidence, as analyzed here. The claimant had a more recent exacerbation of symptoms, based on treatment notes in 2018; however, prior notes generally show stability in the claimant's symptoms and functioning. She was able to travel for a vacation to Disney. She had friends. Her mental status exams do not support this degree of limitation. It appears that the source relied heavily on the claimant's subjective report of symptoms and limitations rather than the objective findings. Further, the source had relatively short treating relationship with the claimant, having seen her for the first time in February 2018 for only a few sessions. The claimant experienced an acute exacerbation of symptoms at that time, as noted above, but prior treatment records do not support this degree of limitation on a regular or sustained basis. Accordingly, the undersigned gives the assessment little weight.

(R. at 26.)

An ALJ must consider all medical opinions that he or she receives in evaluating a

claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions

as "statements from physicians and psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of your impairment(s), including your symptoms,

diagnosis and prognosis, what you can still do despite impairment(s), and your physical or

mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are

likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a

patient's] medical impairment(s) and may bring a unique perspective to the medical evidence

15

that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R.

§ 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling

weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ

must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling

weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment
> relationship and the frequency of examination, the nature and extent of the
> treatment relationship, supportability of the opinion, consistency of the opinion
> with the record as a whole, and the specialization of the treating source—in
> determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of

determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20

C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x

543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for

the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the
> disposition of their cases," particularly in situations where a claimant knows that
> his physician has deemed him disabled and therefore "might be especially

16

> bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under Blakley and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the parties do not dispute that Dr. Swope is a treating physician and that his opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the Plaintiff's] case record . . . ." 20 C.F.R. § 404.1527(d)(2). However, the ALJ concluded that Dr. Swope's opinion *was* inconsistent with other substantial evidence in the record and she therefore assigned little weight to that opinion. (R. at 26.)

17

Plaintiff contends that the ALJ's purported reasons for rejecting Dr. Swope's opinion are not supported by substantial evidence. (ECF No. 15 at 5–14.) In response, the Commissioner asserts that substantial evidence supports the ALJ's conclusion and that the ALJ's decision provides legally sufficient reasons for assigning little weight to Dr. Swope's opinion. (ECF No. 18 at 6–17.) The Court agrees with the Commissioner that the ALJ provided sufficient "good reason" under the applicable regulations for assigning non-controlling weight to Dr. Swope's opinion. Moreover, the Court concludes that the ALJ's decision is supported by substantial evidence.

The ALJ found that Dr. Swope's opinion was inconsistent with other evidence in the record and was unsupported by his own treatment notes. (R. at 26.) Specifically, the ALJ noted that the record evidence showed Plaintiff's symptoms and functioning as being stable, with the exception of an exacerbation in 2018. (*Id.*) The ALJ cited mental status exams that she concluded did not support the level of limitation assigned by Dr. Swope. (*Id.*) She pointed to Plaintiff's vacation to Disney and the fact that she has friends to support her discounting of Dr. Swope's opinion. (*Id.*) In further support of her decision, the ALJ explained that Dr. Swope appeared to rely heavily on Plaintiff's subjective reports of her symptoms and limitations as opposed to objective findings and that Dr. Swope only treated starting in February 2018 and only for a few sessions. (*Id.*) The ALJ found that it was during this time of treatment that Plaintiff was experiencing an exacerbation of symptoms beyond what the record evidence showed she typically experienced. (*Id.*)

The Court finds that the ALJ pointed to specific record evidence in support of his decision to discount Dr. Swope's opinion, satisfying the "good reason" requirement of the

treating physician rule. *See Friend*, 2010 WL 1725006, at *7 (holding that the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"); *see also Tilley*, 394 F. App'x at 222 (indicating that, under the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

The Court further finds that substantial evidence supports the ALJ's decision to assign little weight to Dr. Swope's opinion. For example, Dr. Swope's opinion was inconsistent with the other substantial evidence. Here, several of Plaintiff's providers found that her memory was intact with average intelligence and logical thought process. (R. at 67, 83, 293, 318, 633, 648.) *See Tilley*, 394 F. App'x at 222 ("a treating physician's opinion that is . . . inconsistent with the other substantial evidence is not controlling") (citing 20 C.F.R. § 404.1527(d)(2)). Dr. Swope's opinion of debilitation was also inconsistent with evidence that suggested Plaintiff could perform high levels of activities of daily living. For instance, record evidence shows Plaintiff having positive interactions with her treatment providers, having several friendships, and navigating various social situations, including taking vacations. (R. at 53, 68, 83–84, 283–86, 300–02, 453, 543–44.) Medical evidence in the record shows that Plaintiff usually experiences stable symptoms and is only occasionally in a depressed or anxious mood. (R. at 299, 334, 628, 636–37.) The record shows that Plaintiff regularly cares for her son and enjoys vacations and nights out with friends. (R. at 51–53, 283–84, 648.) The ALJ properly discounted Dr. Swope's opinion for these reasons. *See Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 805 (6th Cir. 2011) (finding that the ALJ appropriately discounted a treating physician's opinion where,

19

among other things, it was inconsistent with the plaintiff's daily activities).

Moreover, Dr. Swope's opinion was inconsistent with his own treatment notes. He acknowledged in his treatment notes that Plaintiff could maintain her activities of daily living. (R. at 625.) The ALJ properly declined to afford Dr. Swope's opinion controlling weight to the extent his treatment notes were internally inconsistent. *See Gaskin v. Comm'r Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008) (finding that an ALJ properly rejected portions of a treating physician's opinion because they were inconsistent with other evidence in the record, including the treating physician's own treatment notes). Indeed, Dr. Swope did not provide any support for his conclusion that Plaintiff would miss "all days" of work. (R. at 661.) *See* 20 C.F.R. § 404.1527(c)(3) (identifying "supportability" as a relevant consideration in evaluating a medical source opinion). Finally, Dr. Swope did not have a lengthy doctor-patient relationship with Plaintiff. He only treated Plaintiff for four months and recorded only two office visits during a period of exacerbation. (R. at 638–44.) In contrast, the other record evidence, some of which contradicts Dr. Swope's findings, cover a three-year time span. The ALJ reasonably discounted Dr. Swope's opinion for this reason too. *See* 20 C.F.R. § 404.1527(c)(2)(i) (identifying "[l]ength of the treatment relationship and the frequency of examination" as a relevant consideration in evaluating a medical source opinion.)

Substantial evidence also supports the ALJ's finding that Dr. Swope heavily relied on Plaintiff's self-reports instead of objective evidence. For instance, Dr. Swope's opinion that Plaintiff would miss "all days" as well as his notation that she had "never sustained work" conflict with Plaintiff's actual robust work history. (R. at 206, 633, 660.) Indeed, an ALJ is not "required to accept the mental impairment opinions of a treating physician who relies solely

20

on a [claimant's] subjective complaints." *Hicks v. Comm'r of Soc. Sec.*, No. 2:09-cv-01001, 2011 WL 1114312, *13 (S.D. Ohio Feb. 2, 2011) (citing *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274–75 (6th Cir. 2010)).

Here, the ALJ's conclusion that the record contains evidence inconsistent with Dr. Swope's opinion, that Dr. Swope's opinion is internally inconsistent and was based upon Plaintiff's self-reports after a limited treatment relationship enjoys substantial support in the record. The Court of Appeals for the Sixth Circuit has repeatedly held that "[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted). The ALJ followed the proper analysis and adhered to the treating physician rule, providing "good reasons" for assigning less than controlling weight to Dr. Swope's opinions. Accordingly, this contention of error is **OVERRULED.**

## 2. Credibility Assessment

Plaintiff's second contention of error is that the ALJ erred by failing to consider Plaintiff's strong work history in her credibility assessment. (ECF No. 15 at 20–21.) The Court of Appeals for the Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the

individual's ability to do basic work activities.  *Id.*

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor."  *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v.   Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)).   This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain."  *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)).

Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  *Walters*, 127 F.3d at 531.   Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record."  *Rogers*, 486 F.3d at 247 (internal quotation omitted).   An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029 (March 2016)[2]; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted). The Court of Appeals for the Sixth Circuit has held that "even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)).

Here, the ALJ concluded that some of Plaintiff's statements regarding her symptoms were not credible to the extent that they were inconsistent with medical evidence in the record:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Overall, while the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms.

---

[2] SSR 16-3p, which became effective in March 2016, superseded and rescinded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029, at *1 (March 2016).

(R. at 23–24.)

Plaintiff represents that she had a "virtually uninterrupted 27-year work history, including nearly four years of military experience and earnings as high as $94,682.46." (*Id.* at 20.) Plaintiff asserts that the ALJ was required to and failed to consider this information as a credibility factor. (*Id.* at 21.) The Commissioner asserts that the ALJ was not required to consider this information and that, moreover, it would be improper for the ALJ to consider Plaintiff's work history as evidence of good character. (ECF No. 18 at 19, citing SSR 16-3p.) The Commissioner argues that the ALJ "properly refrained from evaluating Plaintiff's character and instead focused on whether Plaintiff's subjective complaints were supported by objective evidence." (*Id.*)

Plaintiff does not cite to any authority under which the ALJ would be required to explain how Plaintiff's work history affects her subjective symptom assessment. Plaintiff cites two cases, asserting that the applicable regulations require an ALJ to consider a claimant's work history as part of the credibility assessment. (ECF No. 15 at 20–21.) In both cases, the courts noted that a good work history can strengthen a claimant's credibility and should be part of an ALJ's consideration, but neither court found that an ALJ must explain a plaintiff's good work history in the subjective symptom analysis. *Hedden v. Comm'r of Soc. Sec.*, No. 1:10-cv-534, 2011 WL 7440949, 13-14 (W.D. Mich. Sept. 6, 2011); *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009).

To the extent Plaintiff asks this Court to consider her work history as evidence of good character, this request contravenes SSR 16-3p. *See* SSR 16-3P, 2017 WL 5180304, *2 (Oct. 25,2017) ("subjective symptom evaluation is not an examination of an individual's character").

24

Subjective symptom assessment evaluates the consistency of a claimant's reported symptoms without delving into the claimant's character for truthfulness. *Duty v. Comm'r of Soc. Sec.*, No. 2:17-cv-445, 2018 WL 4442595, *5 (S.D. Ohio Sept. 18, 2018). The ALJ properly refrained from evaluating Plaintiff's character and instead focused on whether Plaintiff's subjective complaints were supported by objective evidence.

Even if the Court agreed with Plaintiff's arguments regarding her credibility, the ALJ provided justifications for her finding regarding Plaintiff's complaints of subjective pain. The Court finds that the ALJ's detailed discussion amply supplies substantial evidence supporting her credibility finding and that she properly considered the requisite factors in assessing Plaintiff's allegations of limiting effects of her symptoms. For example, as the Court has previously addressed, the ALJ explained in detail that Plaintiff's subjective symptoms were not supported by the objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms). The ALJ also reasonably considered that Plaintiff required and received only conservative treatment and that at times she did not comply with treatment recommendations specifically related to her use of alcohol. *See* SSR 96–7p, 1996 WL 374186 (July 2, 1996) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) (minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007) ("The ALJ properly considered as relevant the

fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period."); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (discounting the claimant's allegations where he failed to follow prescribed treatment); *cf. Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment). The ALJ also reasonably considered the record evidence reflecting Plaintiff's activities of daily living, noting that Plaintiff drove, shared custody of her son, and independently cared for herself. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain.").

The Court finds that the ALJ's assessment of Plaintiff's credibility was based on consideration of the entire record and is supported by substantial evidence. Accordingly, applying the applicable deferential standard of review, the Court concludes that the ALJ's credibility determination was not erroneous. This contention of error is therefore **OVERRULED**.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's Statement of Errors is therefore **OVERRULED** and the Commissioner's decision is **AFFIRMED.** The Clerk is **DIRECTED** to enter **FINAL JUDGMENT.**

**IT IS SO ORDERED.**

Date:   March 24, 2020                              _____/s/ *Elizabeth A. Preston Deavers*_____
                                                                    Elizabeth A. Preston Deavers
                                                                    Chief United States Magistrate Judge